**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

BRIAN MILLER,

    Plaintiff - Appellee,

v.

CNH INDUSTRIAL AMERICA, LLC,

    Defendant - Appellant.

No. 24-3023

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:20-CV-01293-TC)**
_____

Daniel Allen Haws, Haws-KM, P.A., St. Paul, Minnesota (Patrick A. Edwards, Stinson LLP, Wichita, Kansas, Maya H. Kane, Haws-KM, P.A., St. Paul, Minnesota, Lyndon W. Vix, Fleeson, Gooing, Coulson & Kitch, LLC, Wichita, Kansas with him on the briefs) for Defendant-Appellant

Gaye B. Tibbets, Hite, Fanning & Honeyman, LLP, Wichita, Kansas (Don D. Gribble, II, and Deisy Pamela Saenz, Hite, Fanning & Honeyman LLP, Wichita, Kansas with her on the briefs) for Plaintiff-Appellee

_____

Before **TYMKOVICH** and **CARSON**, Circuit Judges.[*]

_____

[*] Judge McHugh sat on the panel that heard this case during oral argument, but later recused herself. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedures permitting disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this decision.

_____

**CARSON**, Circuit Judge.

_____

Dismounting a moving tractor is dangerous. Although a tractor manufacturer must warn its customers of many dangers associated with its products and instruct them on how to use its products commensurate with those dangers, it need not do so for this open and obvious danger. The resolution of this case depends upon whether dismounting a moving tractor is such an open and obvious hazard that the manufacturer has no duty to warn of the danger.

One day while operating a tractor manufactured by Defendant CNH Industrial America, Kansas Plaintiff Brian Miller ("Plaintiff") leaped out of his moving tractor to retrieve an object in its path. The tractor kept moving forward, pulling the attached seed drill over Plaintiff and seriously injuring him. Plaintiff sued Defendant for failing to warn that its tractor would continue moving forward once he left his seat. He prevailed in a jury trial despite Defendant's argument that this danger should have been open and obvious to any reasonable user. Our jurisdiction arises under 28 U.S.C. § 1291. We reverse.

## I.

Plaintiff is a dairy farmer with many years of experience. He drove tractors to pursue his trade. After working with several over the years, Plaintiff bought a new tractor from Defendant with features such as continuous variable transmission, intuitive ergonomic processes, and an electronic parking brake. The tractor's 500-page manual, of

2

which Plaintiff read only certain parts, instructed him on how to use it.  The manual said, for example, "not [to] get off the tractor while it is in motion," and "[b]efore leaving the tractor, park [it] on level ground, apply the parking brake, lower attached implements to the ground, . . . and stop the engine."  It also said that "[i]f it is necessary to dismount from the tractor[,] ensure any [Power Take-Off] driven equipment is allowed to come to a complete stop before leaving the seat."  Elsewhere it stated that "the park brake is automatically engaged . . . [if] [t]he operator leaves the seat for more than five seconds." The tractor's cabin, moreover, had several safety features, such as a safety alarm that rang when an operator left the seat without engaging the parking brake.

One day while using the tractor in his field, Plaintiff saw an object in his path. He decelerated the tractor from its then-current speed of between 4.5 and 5.5 miles per hour to a slower speed and dismounted to retrieve the object. [1]  But the tractor never stopped and continued to move forward as he dismounted.  Plaintiff testified he thought the parking brake would stop the tractor after he left the seat for five seconds.  For that reason "he did not hold the speed lever back long enough for the tractor to slow to a stop."  The still-moving tractor's thirty-foot-wide seed drill crushed Plaintiff under it as he walked over to the object he planned to retrieve.  The tractor advanced unabated.

---

[1] In the response brief, Miller says that "[h]e did not know exactly at what speed the tractor was moving when he stepped out of it," so for purposes of this opinion we accept his word that the tractor slowed but did not stop before hitting Miller.  Appellee's Br. at 17.

Plaintiff sued in the United States District Court for the District of Kansas under its diversity jurisdiction. He claimed Defendant failed to adequately warn him of the danger that led to his accident and that it designed the tractor defectively. Plaintiff later abandoned the design claim. As to the former, he argued that the tractor's manual should have said more clearly that the parking brake would not engage automatically to stop the moving tractor after he left the seat for five seconds. After discovery, Defendant moved for summary judgment. It argued, among other things, that it did not need to warn Plaintiff of the open and obvious risk that getting off a moving tractor posed. The district court denied that motion. Defendant moved for judgment as a matter of law after a seven-day jury trial asserting the same theories, which the district court also denied. The jury found for Plaintiff, apportioning Defendant sixty-percent fault. Defendant renewed its motion for judgment as a matter of law and moved for both reconsidered judgment and a new trial. The district court denied all three motions.

## II.

As this is a diversity case, we apply Kansas substantive law. Los Lobos Renewable Power, LLC v. Americulture, Inc., 885 F.3d 659, 668 (10th Cir. 2018) (citing Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941)). We apply the federal summary-judgment and judgment-as-a-matter-of-law standards. Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1194–95 (10th Cir. 2002). Both are identical: We affirm the district court's grant if "there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Dupree v. Younger, 598 U.S. 729, 731 (2023) (quoting Fed. R. Civ. Proc. 56(a)). Because Defendant moved for both summary judgment and

4

judgment as a matter of law, we consider both the discovery and trial records.  Id. at 731–32 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51 (1986)).

We review both motions for summary judgment and judgment as a matter of law de novo.  Lompe v. Sunridge Partners, LLC, 818 F.3d 1041, 1054 (10th Cir. 2016) (citing Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1200 (10th Cir. 2012)).  Whether a product hazard is open and obvious is often a factual question for the jury.  See Miller v. Zep Mfg. Co., 815 P.2d 506, 515 (Kan. 1991); Gregory v. Creekstone Farms Premium Beef, LLC, 728 F. App'x 824, 826 (10th Cir. 2018) (citing Walker v. Mustang Enters., Inc., 2016 WL 3570483, at *3 (Kan. Ct. App. July 1, 2016) (per curiam)).  But the existence of a duty is a legal question, and "[i]f a danger is obvious, then its obviousness constitutes a warning, and the product seller's failure to provide a separate warning should not constitute a defect."  Hiner v. Deere & Co., 340 F.3d 1190, 1194 (10th Cir. 2003) (quoting Miller v. Lee Apparel Co., 881 P.2d 576, 588 (Kan. Ct. App. 1994)); see also Calwell v. Hassan, 925 P.2d 422, 777–78 (Kan. 1996).  Whether a product hazard is open and obvious therefore falls within the usual factual-question dichotomy: normally a jury question, but sometimes a legal question courts can resolve on summary judgment if a product danger is sufficiently open and obvious that manufacturers can reasonably presume any customer or operator would know of it.  See Long v. Deere & Co., 715 P.2d 1023, 1030 (Kan. 1986) (denying that "as a matter of law that the risks here were so commonly known that a warning would have been futile" and deferring to the contrary jury verdict).

III.

Defendant makes many arguments as to why it deserves summary judgment, judgment as a matter of law, or a new trial.  It first argues Plaintiff's claim fails as a matter of law because it had no duty to warn Plaintiff of the open and obvious danger that tractors keep moving forward unless their operator stops them.  Second, it argues that Plaintiff's experience as a farmer gave him sufficient notice of the danger of his actions and it had no obligation to warn him.  Third, it argues the manual provided adequate warnings, and any of its inadequacies did not cause Plaintiff's accident.  Finally, it alleges prejudicial errors infected the trial, and that fairness demands a new one.  As Defendant prevails on his first argument, we address only it.

Under Kansas product-liability law, manufacturers must "warn consumers and users of its products when it knows or has reason to know that its product is or is likely to be dangerous during normal use."  Richter v. Limax Int'l, Inc., 45 F.3d 1464, 1468 (10th Cir. 1995) (quoting Pfeiffer v. Eagle Mfg. Co., 771 F. Supp. 1133, 1139 (D. Kan. 1991)).  But manufacturers need not warn of "dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product."  Kan. Stat. Ann. § 60-3305(c).  Thus, "manufacturer[s] should be able to assume that the ordinary product user is familiar with obvious hazards—that knives cut, that alcohol burns, [and] that it is dangerous to drive automobiles at high speed."  Delaney v. Deere & Co., 999 P.2d 930, 939 (Kan. 2000) (quoting 44 Fed. Reg. at 62,725).  This test is objective.  Butler v. Daimler Trucks N. Am., LLC, 74 F.4th 1131, 1148 (10th Cir. 2023).

The duty to warn also includes the duty to instruct consumers about how to use a product safely to avoid relevant dangers. Delaney, 999 P.2d at 938. The open and obvious exception applies to this aspect of the duty to warn as well. Kan. Stat. Ann. § 60-3305(c) (stating that "any duty to have properly instructed in the use of such product shall not extend . . . to . . . dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product.").

Both we and Kansas courts have held that a menagerie of dangers are sufficiently open and obvious that they require no warning. In Lippincott v. State Industries, for example, we held that a water heater manufacturer had no duty to warn consumers that the hot water its product produced was dangerous for unattended children. 1998 WL 208884, at *2 (10th Cir. April 29, 1998). The Court of Appeals of Kansas reached a similar conclusion in Haskins v. Kloster Corporation, deciding that a sand-mixer manufacturer need not warn its customers that placing one's fingers into a product with rotating blades would likely injure them. 2000 WL 36746086, at *1 (Kan. Ct. App. Sept. 1, 2000) (per curiam). Most similar to this case, in Ahrens v. Ford Motor Company we held that an ordinary consumer would have known the open and obvious risk of falling off a tractor not equipped with a seatbelt. 340 F.3d 1142, 1147 (10th Cir. 2003). None of these cases explained elaborately why these risks were obvious. They used the same principle as res ipsa loquitur: "the thing speaks for itself." Stevens v. Barnard, 512 F.2d 876, 880 (10th Cir. 1975) (quoting Nat'l Union Fire Ins. Co. v. Elliott, 298 P.2d 448, 451 (Okla. 1956)).

7

Defendant had no duty to warn Plaintiff of the open and obvious danger of getting off a moving tractor. A reasonable person should know that exiting a vehicle still in motion, tractor or otherwise, and then stopping in front of that still-moving vehicle would likely injure anyone who does so. Both the trial and discovery records support this commonsense conclusion. Plaintiff acknowledged the danger of stepping off of a moving tractor. And his own witness testified that one "would have to be suicidal to step off of a moving tractor." He reported that "one of the things that you learn[] from an early age is not to get out of a moving tractor because it's a safety risk to do so." Even the most cautious person often ignores safety rules for expedience. But Defendant need not have warned Plaintiff about the risk he took by dismounting a moving tractor because that risk was so obvious.

Plaintiff resists this conclusion. He argues first that we cannot review the district court's summary judgment denial because its ruling "was explicitly fact dependent." As "[p]ost-trial appeals of the denial of summary judgment are only available for 'pure issues of law,'" Appellee's Br. at 26 (quoting Valdez v. Macdonald, 66 F.4th 796, 815 (10th Cir. 2023)), and the question of whether the relevant danger was open and obvious was a "uniquely factual" one, he contends we must not disturb the district court's conclusion that reasonable minds could differ on the point. But whether a danger is open and obvious is a legal question when the relevant evidence points clearly in one direction sufficient to satisfy summary judgment standards. See Long, 715 P.2d at 1030. The discovery record in this case did just that, and "applying the same standard as the district court" we reverse summary judgment denials in such cases. Adamson v. Multi Cmty.

8

Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008) (citing Trujillo v. Univ. of

Colo. Health Sciences Ctr., 157 F.3d 1211, 1213 (10th Cir. 1998)).

This argument also fails because the case lacked material disputed facts that would

have precluded the district court from ruling on the issue as a matter of law.  Plaintiff

argues the parties disputed "whether [Defendant] had a duty to warn consumers like him

about when the parking brake would, and would not, automatically set."  But deciding

whether dismounting a moving tractor was an open and obvious danger preempts this

question because manufacturers have no duty to write operating instructions that warn of

open and obvious dangers.  A pure legal question is "one 'that could be settled once and

for all and thereafter would govern numerous [cases]' without any 'fact-bound and

situation-specific aspects.'"  Valdez, 66 F.4th at 815 (quoting Empire Healthchoice

Assur., Inc. v. McVeigh, 547 U.S. 677, 701 (2006)).  That is precisely the case here.

Answering whether it should have been open and obvious to every operator that

dismounting a moving tractor and going in front of the attached implement was

dangerous does not require us to resolve any disputes that are normally a jury's province,

such as judging witnesses' credibility or deciding which party's version of events was

correct.  As stated above, whether a danger was open and obvious can be a factual

question but is here a legal one because the evidence points clearly in one direction.[2]  We

can therefore reverse the district court's summary judgment denial even after trial.

---

[2] Though he relates this standard to judgment as a matter of law, Plaintiff acknowledges that we can reverse a trial verdict "if the evidence points but one way" and "when a court is 'certain the evidence conclusively favors only one party.'"

Plaintiff next contends that ruling for Defendant "suggest[s] that if one danger inherent in a product's use is obvious the manufacturer is excused from providing adequate instructions about how to safely use the product." He does not deny that dismounting a moving tractor is dangerous, but contends this was not the relevant danger Defendant had to warn against because that danger did not cause his injury. Defendant had to, instead, instruct consumers more clearly that the electronic parking brake would not engage to stop a moving tractor. Its failure to do so led to Plaintiff taking the action he knew would be otherwise dangerous by dismounting the still-moving tractor.

This argument relies on a false premise. The tractor's manual said several times "[d]o not get off the tractor while it is in motion," and "[b]efore leaving the tractor, park the tractor on level ground, apply the parking brake, lower attached implements to the ground, disengage the [Power Take-Off] and stop the engine." It warned that "[b]efore the operator leaves the seat, the hand brake and/or park brake MUST be engaged or the tractor could inadvertently move." The tractor's cab similarly cautioned operators to "[a]lways engage parking brake before dismounting [because] [t]ransmission will not prevent tractor from rolling when engine is shut off." These descriptions illustrate the parking brake's intended purpose: holding a stationary tractor in place rather than stopping it while in motion. And Plaintiff agreed during his deposition that this was the case.

---

Appellee's Br. at 33 (quoting Bill Barrett Corp. v. YMC Royalty Co., 918 F.3d 760, 766 (10th Cir. 2019)).

Plaintiff relies mostly on a manual provision that states "[t]he park brake is automatically engaged [if] . . . [t]he operator leaves the seat for more than five seconds." That may seem ambiguous at first. But as the surrounding warnings, instructions, and Plaintiff's own understanding reveal, the parking brake's purpose is to keep the tractor stationary. The manual did not contradict what should have been the commonsense practice of not dismounting a moving tractor.[3] As it did not do so, Defendant had no duty to instruct Plaintiff on safe tractor operation beyond what it did to specifically avoid that risk.[4]

The cases Plaintiff cites do not contradict this holding. He cites <u>Kincaid v. Kubota Tractor Corporation</u>, 2020 WL 3022977 (Kan. Ct. App. June 5, 2020) (per curiam), for example, for the proposition that knowing something is dangerous because of one risk does not preclude a failure to warn claim about another risk. <u>Kincaid</u> was about a man who rode on the front of a skid steer despite cab and operator manual warnings against

---

[3] We do not decide whether the tractor's operating manual adequately warned Plaintiff the parking brake would not stop the tractor from moving after it engaged when he left his seat after five seconds. We merely observe, instead, that the tractor's manual never undermined the idea that its operator should not dismount a still-moving tractor. Because Defendant had no duty to warn of that obvious danger, it had no duty to instruct its tractor's operators not to operate the vehicle in a manner that could lead to it.

[4] Suppose, for example, that a manufacturer produced a bandsaw with a safety guard designed to prevent the blade from harming consumers' hands while operating the device. A reasonable consumer would still know that placing one's hands near the bandsaw's blade was dangerous and might cause injury. The manufacturer need not warn in its bandsaw's operating manual against placing one's hands near the blade when instructing consumers about how the product's safety features worked if the instructions gave no other indication that consumers should abandon their normal understanding of the dangers inherent in operating a bandsaw.

riding on the front. The skid steer's grapple attachment trapped the man's shoulder between it and the skid steer's cab, injuring his spine. Kincaid, 2020 WL 3022977, at *1. The Court of Appeals of Kansas reversed the district court's summary judgment grant to the skid steer's manufacturer partly because the plaintiff, a passenger, "was not familiar with the in-cab warnings, had not read the operator's manual, and did not understand the exterior warning sticker to be a general prohibition against riding on the skid steer." Id. at *8.

Kincaid says nothing about whether such a danger was open and obvious. Although the Kincaid court observed that the plaintiff's "acknowledgement that doing anything on a skid steer was generally dangerous or dangerous in different ways does not compel a conclusion that he knew it was not safe to ride on a skid steer," it did so while analyzing the defendant's argument that the plaintiff actually knew about the risk of the activity and therefore it did not need to warn him about that risk. See id. at *8–9. The warning's specificity was important because the defendant's defense turned on whether the plaintiff actually read the warning it provided, and whether he understood what the warning meant. Id. That subjective inquiry contrasts the objective one here because, unlike riding on the front of a skid steer, one need not read a specific instruction to know the danger of dismounting a moving tractor. Any reasonable operator would know not to do so because the danger is open and obvious—Plaintiff's own witnesses admitted as much. In this context, a danger's obviousness may preclude a manufacturer from having to instruct consumers that use their products how to specifically avoid more generally known dangers.

12

And contrary to Plaintiff's argument, the danger associated with dismounting a moving tractor is the relevant one for his injury.  Plaintiff cites Markham v. BTM Corporation, 2011 WL 1231084 (D. Kan. Mar. 30, 2011), which he says rejected "the same argument [Defendant] [makes], that K.S.A. [§] 60-3305 excused it of the duty to warn of the specific idiosyncrasy of its machine because employees knew it was dangerous not to lockout/tagout/shut off the power before working on the machine."  Markham dealt with a mechanic's suit against an industrial press manufacturer for injuries he sustained when a coworker pressed the machine's emergency stop button and crushed his arm under the press.  Markham, 2011 WL 1231084, at *1.  The mechanic had his arm inside the turned-off machine and, unbeknownst to the coworker, pressing the emergency stop button automatically returned the industrial press to the upward position that trapped and injured the mechanic's arm.  Id.

The industrial-press manufacturer's argument differed from Defendant's.  Plaintiff references the manufacturer's argument that it had no duty to warn because the injury would not have occurred if the coworker and mechanic followed the industrial press's instructions.  The Markham court rejected that argument because "[a] plaintiff may still recover [on a failure-to-warn claim] upon proving 'the danger is not within the cognition of a reasonable user,'" and the mechanic "tied [his claim] directly to the evidence of the emergency stop button's nonstandard operation."  Id. (quoting Wheeler v. John Deere Co., 935 F.2d 1090, 1105 (10th Cir. 1991)).  In other words, the mechanic premised his argument on the industrial press that injured him operating differently from most industrial presses, requiring the manufacturer to warn its users about dangers they would

13

not otherwise have expected.  Plaintiff, meanwhile, did something that any reasonable person would have recognized was dangerous by dismounting his still-moving tractor, the obviousness of which Defendant argues abrogates its duty to warn.  The industrial press's atypical operation required the manufacturer in <u>Markham</u> to give a specific warning because its exposed users to an unexpected danger.  But here, Defendant's tractor did not operate differently enough from most tractors to create a danger Plaintiff should not have expected.

Plaintiff denies his tractor operated as did any other.  He says that it "was his first sophisticated tractor," and was "designed to be 'intuitive' and 'do things for operators that they previously had to do for themselves.'"  He compares his tractor and most other tractors to self-driving and regular cars, contending that "just because most of us have driven cars for years, the dangers in operating a self-driving car are [not] obvious to us."  Plaintiff fails to show that the electronic parking brake about which he complains was so atypical a feature that he could not reasonably have understood how it should have operated.  Even if a self-driving car had novel features a driver would not understand intuitively, that driver would still understand the car's standard features.  A brake is still a brake even in a self-driving car.  And Plaintiff knew that his tractor's parking brake kept it stationary while parked rather than stopped it while moving.  In his own words, "[t]he park brake is for use while in park."  He also admitted he was unaware of any other tractor that had a parking brake that would have stopped it while moving.  Plaintiff should not reasonably have expected the parking brake to stop the moving tractor.  But even if Plaintiff expected the tractor to stop, the parties agree that it had not stopped when

14

he dismounted—so by dismounting as he did, he placed himself in danger of an open and obvious hazard of which he was aware.

Finally, Plaintiff argues throughout his brief that we should respect the jury's verdict and leave it in place.  We do not reverse a jury verdict lightly—indeed, we upset a jury's verdict only in the rarest of occasions.  But the jury should not have decided this legal issue, it should have been decided by the trial judge as a matter of law.  Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988).  Defendant had no duty as a matter of law to warn and instruct Plaintiff of the danger of dismounting a moving tractor because it was open and obvious.

REVERSED.